Case 3:25-cv-01397-AMO   Document 15   Filed 07/29/24   Page 1 of 8

FILED
July 29, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____vl_____
DEPUTY

---

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

---

**ELIAS JOSEPH KARAM,**

**Plaintiff,**

**vs.**

**META PLATFORMS, INC.,**

**Defendant.**

---

**Case No. SA-24-CV-00720-OLG**

---

**FIRST AMENDED COMPLAINT**

---

Plaintiff, Elias Joseph Karam, hereby files this First Amended Complaint against Defendant, Meta Platforms, Inc., and alleges as follows:

1. **PARTIES**
   - Plaintiff: Elias Joseph Karam, a U.S. Citizen residing in San Antonio, Texas. Elias Joseph Karam is a business owner and an active user of social media platforms for both personal and business purposes.
   - Defendant: Meta Platforms, Inc., a corporation headquartered in Menlo Park, California.

2. **JURISDICTION AND VENUE**
   - This Court has jurisdiction over this action under 28 U.S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 1331 (federal question jurisdiction) due to the federal claims involved.
   - Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the Plaintiff resides in this district.
   - Plaintiff's Facebook advertisements were specifically targeted at users above 18 years of age and located in Texas. The ad platform transactions involved monetary exchanges between Plaintiff, Elias Joseph Karam, and Meta Platforms, Inc., further justifying jurisdiction as the commerce was directed and executed within Texas.

3. **FACTUAL BACKGROUND**
   - Plaintiff initiated this lawsuit due to the detrimental impact of Meta's actions on his business and personal well-being, specifically through Meta's advertising platform, which harmed Plaintiff's business interests in Texas.

4. **ADDITIONAL CLAIMS**
   - **ADA Accessibility Issues**
     - Meta Platforms, Inc. has failed to comply with the Americans with Disabilities Act (ADA) by not providing accessible platforms for individuals with disabilities. This includes, but is not limited to, inaccessible features in the Facebook Marketplace, Buy and Sell Groups, and the inability to adequately participate in buying and selling activities on these platforms due to a lack of screen reader compatibility and other necessary accommodations.
     - Plaintiff, as a user with disabilities, has been significantly hindered in accessing and utilizing Meta's Marketplace and Buy/Sell Groups, both for purchasing and selling items, due to these accessibility shortcomings. This has caused substantial financial loss and business setbacks, as Plaintiff relies on these platforms for his business operations.
     - Plaintiff is recognized under the ADA for mental illness, and Meta's failure to accommodate his needs constitutes an accessibility issue that has caused and continues to cause significant damage.
     - **Precedent**: In *National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006), the court held that the ADA applies to websites and requires them to be accessible to individuals with disabilities.

   - **Privacy Concerns**
     - Meta Platforms, Inc. has violated Plaintiff's privacy rights by unauthorized data collection, sharing, and usage of personal information across all platforms owned by the company, including Facebook, Instagram, and WhatsApp.
     - This includes tracking user activity without consent, accessing private messages, and storing personal data without adequate security measures, causing Plaintiff distress and loss of personal privacy.
     - **Precedent**: In *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), the court held that accessing Facebook user data without authorization constitutes a violation of privacy and the Computer Fraud and Abuse Act (CFAA).

   - **Government Monitoring**
     - Meta Platforms, Inc. has unlawfully cooperated with government agencies to monitor and surveil the online activities of U.S. citizens, including Plaintiff, without proper legal justification or user consent. This has infringed on Plaintiff's right to privacy and has caused significant distress.
     - **Precedent**: In *United States v. Jones*, 565 U.S. 400 (2012), the Supreme Court held that attaching a GPS device to a vehicle and monitoring its movements constitutes a search under the Fourth Amendment, emphasizing the importance of privacy and the need for legal justification for surveillance.

   - **Privacy on All Platforms**
     - Plaintiff has experienced privacy violations on all platforms associated with Meta Platforms, Inc., including but not limited to Instagram, WhatsApp, and all pages and profiles ever associated with Plaintiff, Elias Joseph Karam.
     - Defendant has failed to ensure the privacy and security of Plaintiff's information, leading to unauthorized access and use of Plaintiff's personal data.
     - **Precedent**: In *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F.

Supp. 3d 767 (N.D. Cal. 2019), the court held that Facebook's failure to protect user data from unauthorized access and use constituted a violation of user privacy rights.

- **FOIA Requests**
    - Plaintiff has submitted multiple Freedom of Information Act (FOIA) requests seeking information about the unauthorized surveillance and data collection activities conducted by Meta Platforms, Inc. in cooperation with government agencies. Defendant has either failed to respond adequately to these requests or has denied access to relevant information without proper justification.
    - **Precedent**: In *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989), the Supreme Court emphasized the importance of the FOIA in promoting transparency and accountability in government activities.

- **Crimes Against Plaintiff Based on Religion and Other Protected Classes**
    - Plaintiff has been subjected to harassment, discrimination, and other crimes based on his religious beliefs, ethnic background, and other protected classes. Meta Platforms, Inc. has failed to take adequate measures to prevent such actions and protect Plaintiff from harm.
    - These actions include, but are not limited to, allowing hate speech, discriminatory content, and targeted harassment to proliferate on its platforms without appropriate intervention or enforcement of community standards.
    - **Precedent**: In *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398 (6th Cir. 2014), the court held that website operators could be held liable for failing to remove defamatory and harassing content when they have actual knowledge of such content and the ability to remove it.

- **Bans and Account Restrictions**
    - Over the past four years, Plaintiff has faced numerous unjustified bans and restrictions on his accounts on platforms owned by Meta Platforms, Inc., including Facebook and Instagram. These bans have severely impacted his ability to conduct business, communicate with clients, and maintain his social presence.
    - Specific instances include:
        - **February 2021:** Plaintiff's Facebook account was temporarily suspended for 30 days without clear explanation, hindering his ability to manage his business page and engage with customers.
        - **August 2021:** Plaintiff faced a 60-day ban on posting in Buy/Sell groups on Facebook, which led to significant financial losses due to the inability to sell products.
        - **November 2021:** Plaintiff appealed the deactivation of his ad account, which affected his business advertising efforts.
        - **January 2023:** Plaintiff's accounts were again temporarily banned, with vague allegations of violating community standards, despite no clear evidence or specific reasons provided by Meta Platforms, Inc.
        - **March 2023 - July 2024:** Plaintiff encountered numerous issues with Facebook Marketplace, as indicated in the uploaded report:
            - **March 5-21, 2024:** Multiple issues with Facebook Marketplace.
            - **February 7, 2024:** Issue with Facebook Marketplace.
            - **January 27, 2024:** Appealed a decision on ads/products.
            - **August 8, 2023:** Issue with Facebook Marketplace.
            - **June 6, 2023:** Issue with Facebook Marketplace.
            - **May 17, 2022 - October 19, 2022:** Various issues with payments on Facebook.
    - These bans and issues have resulted in significant reputational harm to Plaintiff. Each time Plaintiff's account was banned or restricted, ongoing conversations with potential buyers or sellers

were abruptly halted. This led to the perception that Plaintiff was banned for fraudulent activities, thereby indirectly causing slander by proxy and damaging Plaintiff's credibility.
   - The uncertainty of the bans, often initially stated to be 24 hours but extending to 30 or 60 days, forced Plaintiff to accept lower offers for fear of prolonged restrictions. This caused financial harm and business disruption.
   - The arbitrary and capricious actions of Meta Platforms, Inc. have caused permanent harm and damage to Plaintiff through these unjustified and inconsistent enforcement practices.
   - The monetary transactions between Plaintiff and Meta Platforms, Inc. for advertising services establish a commercial relationship. The sporadic and unjustifiable bans on Plaintiff's accounts, despite payments made for ad services, constitute fraud and have led to significant damages.
   - **Precedent**: In *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008), the court held that platform operators could be held liable for negligence in failing to protect users from harm caused by platform policies and enforcement.

  - **Breach of Contract**
    - Meta Platforms, Inc. breached the terms and conditions agreed upon, especially concerning advertising services and user account management. Plaintiff entered into an agreement with Meta

 for advertising services, paying substantial amounts for targeted advertisements to promote his business. Despite fulfilling his obligations under the contract, Plaintiff's accounts were unjustifiably banned, preventing him from utilizing the services he paid for. This breach has resulted in significant financial losses and business disruption.
    - **Precedent**: In *Bissessur v. Indiana University Board of Trustees*, 581 F.3d 599 (7th Cir. 2009), the court held that the elements of a breach of contract claim include the existence of a valid contract, performance by the plaintiff, breach by the defendant, and damages resulting from the breach.

  - **Consumer Protection Violations**
    - Meta Platforms, Inc. engaged in deceptive, unfair, and fraudulent practices in violation of the Texas Deceptive Trade Practices Act (DTPA). Meta misrepresented the reach and effectiveness of its advertising services, leading Plaintiff to invest substantial amounts in advertising. The actual performance of these advertisements was significantly below the promised standards, resulting in financial harm to Plaintiff. Additionally, the arbitrary banning of Plaintiff's accounts without proper justification constitutes an unfair business practice.
    - **Precedent**: In *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex. 1995), the Texas Supreme Court held that deceptive practices, particularly those involving false advertising, are actionable under the DTPA.

  - **Negligence**
    - Meta Platforms, Inc. was negligent in protecting user data and ensuring the safety and accessibility of its platforms. Despite having a duty to maintain a secure and accessible environment for its users, Meta failed to implement adequate security measures to protect personal data and did not provide necessary accommodations for users with disabilities. This negligence has resulted in privacy breaches, financial losses, and emotional distress for Plaintiff.
    - **Precedent**: In *Cast Art Industries, LLC v. KPMG LLP*, 36 A.3d 1049 (N.J. 2012), the court held that negligence requires proof of a duty of care, breach of that duty, causation, and damages.

  - **Intentional Infliction of Emotional Distress**
    - Meta Platforms, Inc.'s actions were extreme and outrageous, causing severe emotional distress to Plaintiff. The repeated and unjustified bans, along with the failure to address Plaintiff's concerns and

appeals, have caused significant stress and anxiety. Meta's disregard for Plaintiff's rights and well-being has exacerbated his mental health conditions, resulting in severe emotional distress.
    - **Precedent**: In *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988), the Supreme Court held that a claim for intentional infliction of emotional distress requires proof of extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress.

  - **Defamation**
    - Meta Platforms, Inc. made false and damaging statements about Plaintiff, directly impacting his reputation and credibility. The unjustified bans and restrictions on Plaintiff's accounts have led to the perception among his clients and business associates that he was engaged in fraudulent activities. This indirect slander by proxy has damaged Plaintiff's professional reputation, causing significant harm to his business and personal standing.
    - **Precedent**: In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Supreme Court held that public figures must prove actual malice to prevail in a defamation case. For private individuals, negligence in making false statements may suffice.

  - **Invasion of Privacy**
    - Meta Platforms, Inc. intruded upon Plaintiff's seclusion, publicly disclosed private facts, and appropriated Plaintiff's name or likeness without consent. Meta's unauthorized access to private messages, tracking of user activity without consent, and sharing of personal information with third parties have violated Plaintiff's privacy rights. These actions have caused significant distress and harm to Plaintiff's personal and professional life.
    - **Precedent**: In *Restatement (Second) of Torts § 652B*, the tort of intrusion upon seclusion is recognized when someone intentionally intrudes upon the private affairs of another in a manner that would be highly offensive to a reasonable person.

  - **Antitrust Violations**
    - Meta Platforms, Inc. engaged in anti-competitive practices that harmed Plaintiff's business, in violation of the Sherman Act and Clayton Act. Meta's monopolistic control over social media and advertising platforms has restricted competition and unfairly disadvantaged small businesses like Plaintiff's. These anti-competitive practices have prevented Plaintiff from effectively promoting his business and reaching his target audience, resulting in financial harm.
    - **Precedent**: In *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), the court held that monopolistic practices that harm competition and consumers violate antitrust laws.

  - **Unjust Enrichment**
    - Meta Platforms, Inc. was unjustly enriched at the expense of Plaintiff through unfair business practices. By charging Plaintiff for advertising services and then unjustifiably banning his accounts, Meta has received payment without providing the promised services. This unjust enrichment has caused financial harm to Plaintiff.
    - **Precedent**: In *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519 (N.J. 1994), the court held that unjust enrichment requires proof that the defendant received a benefit at the plaintiff's expense and that it would be unjust for the defendant to retain that benefit without compensating the plaintiff.

  - **Violation of Civil Rights**
    - Meta Platforms, Inc., in conjunction with government agencies, violated Plaintiff's constitutional rights under 42 U.S.C. § 1983. The unauthorized surveillance and monitoring of Plaintiff's online activities without proper legal justification or consent have infringed on his rights to privacy and free speech. These actions have caused significant distress and harm to Plaintiff.

  - **Precedent**: In *Monroe v. Pape*, 365 U.S. 167 (1961), the Supreme Court held that 42 U.S.C. § 1983 provides a remedy for violations of constitutional rights by individuals acting under color of state law.

  - **False Advertising**
    - Meta Platforms, Inc. engaged in false or misleading advertising practices in violation of the Lanham Act. Meta's advertisements misrepresented the effectiveness and reach of its advertising services, leading Plaintiff to invest substantial amounts based on false promises. The actual performance of these advertisements was significantly below the advertised standards, causing financial harm to Plaintiff.
    - **Precedent**: In *Pom Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014), the Supreme Court held that competitors can bring Lanham Act claims for false or misleading advertising that misrepresents the nature, characteristics, or qualities of their goods or services.

  - **Breach of Fiduciary Duty**
    - Meta Platforms, Inc. breached its fiduciary duties to Plaintiff, causing harm. As a provider of advertising services and a platform for business operations, Meta had a fiduciary duty to act in the best interests of its users, including Plaintiff. Meta's arbitrary and unjustified actions, including the banning of accounts and failure to provide adequate support, constitute a breach of this duty.
    - **Precedent**: In *Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001), the Texas Supreme Court held that a fiduciary duty arises when one party is under a duty to act for or give advice for the benefit of another within the scope of their relationship.

  - **Cybersecurity and Data Breach**
    - Meta Platforms, Inc. failed to protect personal data, leading to a data breach in violation of state and federal laws. Meta's inadequate security measures and unauthorized access to personal information have resulted in privacy breaches and financial harm to Plaintiff. These actions violate state and federal data protection laws.
    - **Precedent**: In *In re Equifax, Inc., Customer Data Security Breach Litigation*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019), the court held that companies have a duty to protect personal data and can be held liable for data breaches resulting from inadequate security measures.

  - **Business Interference**
    - Meta Platforms, Inc. unjustifiably interfered with Plaintiff's business relationships, causing financial harm. The arbitrary bans and restrictions on Plaintiff's accounts have disrupted his ability to communicate with clients, complete transactions, and maintain business operations. This interference has caused significant financial losses and damage to Plaintiff's business reputation.
    - **Precedent**: In *Peninsula School District v. E.S.*, 740 F.3d 994 (9th Cir. 2014), the court held that tortious interference with business relationships requires proof that the defendant's conduct was intentional and improper, causing harm to the plaintiff's business relationships.

  - **Fair Housing Act Violations**
    - Meta Platforms, Inc.'s discriminatory practices violated federal and Texas fair housing laws, impacting Plaintiff's real estate business. Meta's platform has allowed discriminatory advertisements and practices that have unfairly targeted Plaintiff's real estate business based on protected characteristics. These actions constitute violations of fair housing laws and have caused financial harm to Plaintiff.
    - **Precedent**: In *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), the Supreme Court held that disparate-impact claims are

cognizable under the Fair Housing Act, allowing challenges to practices that have a discriminatory effect even if there is no discriminatory intent.

   - **Use of Written Messages for AI Training and Profit Sharing**
     - Meta Platforms, Inc. has used Plaintiff's written messages in the training of their artificial intelligence and Large Language Models without his consent. This unauthorized use of

 Plaintiff's intellectual property has contributed to the development and commercial success of Meta's AI products. Plaintiff contends that he is entitled to profit sharing from the revenues generated by these AI models that were trained using his written content.
     - **Precedent**: In *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), the Supreme Court held that the creator of a work is entitled to rights and benefits derived from that work unless there is an agreement to the contrary.

5. **PRAYER FOR RELIEF**
   - Plaintiff respectfully requests that the Court grant the following relief:
     1. A declaration that Defendant's actions violate the ADA, Plaintiff's privacy rights, and protections against discrimination based on religion, ethnicity, and other protected classes.
     2. Injunctive relief requiring Defendant to implement measures to comply with the ADA, protect user privacy, and prevent discrimination and harassment on its platforms.
     3. Compensatory and punitive damages in an amount to be determined at trial.
     4. An order compelling Defendant to fully comply with FOIA requests and disclose all relevant information pertaining to unauthorized surveillance and data collection activities.
     5. An order requiring Defendant to provide profit sharing to Plaintiff from revenues generated by AI models trained using his written content.
     6. Any other relief the Court deems just and proper.

6. **DEMAND FOR JURY TRIAL**
   - Plaintiff demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

7. **LEVEL 2 DISCOVERY PLAN**
   - Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiff requests a Level 2 Discovery Control Plan to ensure a thorough and efficient discovery process. This plan will include:
     1. Depositions of key Meta Platforms, Inc. personnel involved in the decisions related to account bans, privacy policies, and AI training practices.
     2. Production of all documents and communications related to Plaintiff's account bans, advertising services, and use of written messages in AI training.
     3. Interrogatories to uncover details about Meta's internal policies, procedures, and decision-making processes regarding account management and data privacy.
     4. Requests for admissions to streamline issues and facts not in dispute, thereby focusing the litigation on the core contested matters.
     5. Expert witness disclosures and depositions, particularly in areas related to ADA compliance, data privacy, and AI development.

---

**Dated:**

\*\*Respectfully submitted,\*\*

\*\*Elias Joseph Karam\*\*
\*\*259 Rockhill Dr.\*\*
\*\*San Antonio, TX 78209\*\*