UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAS JOSEPH KARAM,<br><br>                Plaintiff,<br><br>        v.<br><br>META PLATFORMS, INC.,<br><br>                Defendant. | Case No. 3:25-cv-01397-AMO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Dept:     Courtroom 10 – 19th Floor<br>Judge:    Hon. Araceli Martínez-Olguín |

**ORDER**

Before the Court is Defendant Meta Platforms, Inc.'s ("Meta") motion to dismiss self-represented Plaintiff Elias Joseph Karam's First Amended Complaint ("FAC"). Having reviewed and considered the parties' respective papers and relevant legal authority, the Court **GRANTS** Meta's motion and dismisses the FAC with limited **LEAVE TO AMEND** as set forth below.

## I.   LEGAL STANDARD

A complaint must be dismissed where it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. A court cannot assume a plaintiff can prove facts he has not alleged. *Id.* at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)). Legal conclusions—even if couched as factual allegations—need not be accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In considering a motion to dismiss, "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (internal quotation marks omitted).[1]

## II.   DISCUSSION

Liberally construing Plaintiff's allegations, his core complaint in this action appears to be that Meta purportedly banned or restricted his Facebook account, which allegedly prevented him from advertising his business or from engaging with potential customers through Marketplace or Facebook's Buy/Sell Groups. While several of his twenty-two claims are tied to that core complaint, he also alleges a number of additional claims that are untethered to any non-conclusory

---

[1] For this reason, in ruling on the instant motion, the Court has not considered the "expanded" allegations and "evidence" Plaintiff proffers in his opposition to Defendant Meta's motion to dismiss.

facts. His claims fail for three reasons: first, Section 230 of the Communications Decency Act stands as a bar to relief to many of the asserted claims; second, Meta's Terms of Service ("Terms") bar many of Plaintiff's claims; and third, Plaintiff's remaining claims are not cognizable or are based on conclusory allegations.

### A. Section 230

Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section 230") bars Plaintiff's claims that are based on allegations that Meta banned his account or failed to prevent other users from posting content about Plaintiff on Facebook.

Under Section 230, a claim should be dismissed if: (1) the defendant is a "provider . . . of an interactive computer service[;]" (2) the content at issue was "provided by another information content provider[;]" and (3) the plaintiff's claim treats the defendant as the "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1).

Here, the first element is satisfied because Meta is an interactive computer service provider because it operates Facebook. *See, e.g., Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017).

The second element is also satisfied because Plaintiff contends that *his* accounts were banned and that Meta failed to prevent other Facebook users from posting content relating to Plaintiff. *See* FAC at 3. Thus, the content at issue was provided by someone other than Meta. *See, e.g.*, *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020) (finding an individual Facebook user constitutes "another information content provider" for purposes of Section 230 (citation omitted)); *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1305-06 (N.D. Cal. 2019) (finding requirement met where plaintiff was the source of the content removed); *Ebeid v. Facebook*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *4 (N.D. Cal. May 9, 2019) (holding that plaintiff's own Facebook posts met the requirement).

Finally, the third element is also satisfied because Plaintiff's claims treat Meta as a publisher to the extent they center on his allegations that Meta banned his accounts (*i.e.*, refused to publish his content) and failed to prevent "hate speech, discriminatory content, and targeted harassment

1  [from] proliferat[ing] on its platforms." FAC at 3-7. Claims premised upon a defendant's decision
2  whether to permit or remove a user's content treat the defendant as a publisher of third-party
3  content. *See, e.g.*, *Lewis*, 461 F. Supp. 3d at 954; *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 796
4  (N.D. Cal. 2021) (holding that Section 230 precluded claims based on Facebook's alleged disabling
5  of plaintiff's account), *aff'd*, 2023 WL 5318464 (9th Cir. Aug. 18, 2023); *Loomer v. Zuckerberg*,
6  No. 22-CV02646-LB, 2023 WL 6464133, at *13 (N.D. Cal. Sept. 30, 2023) (claims dismissed
7  under Section 230 because they were premised upon Facebook's banning of accounts).

8        For these reasons, Section 230 applies and bars Plaintiff's claims that relate to Meta's
9  alleged editorial decisions to suspend or ban his account and to permit content posted by other
10 Facebook users; therefore, the Court **GRANTS** the motion to dismiss the following claims
11 **WITHOUT LEAVE TO AMEND**: (i) Crimes Against Plaintiff Based on Religion and Other
12 Protected Classes (Count 6); (ii) Bans and Account Restrictions (Count 7); (iii) Breach of Contract
13 (Count 8); (iv) Consumer Protection Violation (Count 9); (v) Intentional Infliction of Emotional
14 Distress (Count 11); (vi) Defamation (Count 12); (vii) Unjust Enrichment (Count 15); (viii) Breach
15 of Fiduciary Duty (Count 18); (ix) Business Interference (Count 20); and (x) Fair Housing Act
16 Violations (Count 21). *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no
17 liability may be imposed under any State or local law that is inconsistent with this section."); *Pennie*
18 *v. Twitter, Inc.*, 281 F. Supp. 3d 874, 892 (N.D. Cal. 2017) ("[S]ection 230 of the CDA is a separate
19 and sufficient basis for dismissal.").
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

### B. Terms of Service

Separately, many of Plaintiff's claims are barred by Meta's Terms of Service ("Terms"),[2] which provide in relevant part:

> <u>Limits on liability</u> We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them. Our Products, however, are provided "as is," and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).
>
> We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Meta Products (however caused and on any theory of liability, including negligence), even if we have been advised of the possibility of such damages. Our aggregate liability arising out of or relating to these Terms or the Meta Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

RJN, Ex. A § 3.

First, through the following provision, the Terms disclaim Meta's liability for claims related

---

[2] Meta's request for judicial notice of the Terms is **GRANTED**. Plaintiff admits that he agreed to the "terms and conditions" for Facebook—*i.e.*, the Terms—and he brings a breach of contract claim that implicates the Terms. FAC at 4 (alleging that Meta "breached the terms and conditions agreed upon"). As such, the Court finds that the Terms are incorporated by reference into the FAC, and it may consider them. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (finding that, on a motion to dismiss, a court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). In addition, the Terms are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b) & (b)(2).

to the conduct of others or Meta's response to such conduct:

> We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).

RJN, Ex. A § 3. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1066 (N.D. Cal. 2016) (dismissing defamation-based claims against Facebook premised on third-party posts based on this provision), *aff'd*, 700 F. App'x 588 (9th Cir. 2017).

Second, through the following provision, the Terms foreclose claims based on the functionality or security of Facebook:

> Our Products, however, are provided "as is," and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT.

RJN, Ex. A § 3. *See Young v. Meta Platforms, Inc.*, No. 24-cv-03583-HSG, 2025 WL 2930979, at *3 (N.D. Cal. Oct. 15, 2025) (dismissing negligence, breach of contract, negligent misrepresentation, and breach of fiduciary causes of action predicated on alleged failure to keep plaintiff's account secure and free from disruptions due to third-party conduct based on this provision of the Terms); *see also Baldwin-Kennedy v. Meta Platforms, Inc.*, No. 23-cv-06615-HSG, 2024 WL 4565091, at *2-4 (N.D. Cal. Oct. 23, 2024) (dismissing claims under this provision of the Terms because they were based on Meta's alleged failure to keep plaintiff's account secure and free from disruptions due to third-party conduct).

Finally, the Terms preclude users from recovering "lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to" Facebook. RJN, Ex. A § 3. Any attempts to recover such damages are, accordingly, barred by the Terms. *See King v. Facebook, Inc.*, 599 F. Supp. 3d 901, 911 (N.D. Cal. 2022) (finding that the limitation of liability provision of the Terms expressly barred plaintiff's claim for special damages).

Based on these provisions, the following causes of action are barred by the Terms because they (1) are based on the conduct of third parties and Meta's purported response to such conduct, (2) are based on the functionality or security of Facebook, and/or (3) seek only lost revenue or profits or consequential damages, such as reputational harm, stress and anxiety: (i) Privacy Concerns (Count 2); (ii) Privacy on All Platforms (Count 4); (iii) Crimes Against Plaintiff Based on Religion and Other Protected Classes (Count 6); (iv) Breach of Contract (Count 8); (v) Negligence (Count 10); (vi) Intentional Infliction of Emotional Distress (Count 11); (vii) Defamation (Count 12); (viii) False Advertising (Count 17); (x) Breach of Fiduciary Duty (Count 18); (xi) Cybersecurity and Data Breach (Count 19); (xii) Business Interference (Count 20); and (xiii) Fair Housing Act Violations (Count 21). For these reasons, the Court **GRANTS** Meta's motion to dismiss these claims based on the Terms **WITHOUT LEAVE TO AMEND**.

### D.     Failure to State a Claim

Plaintiff's remaining claims fail because they are not cognizable as a matter of law or are insufficiently pleaded.

#### 1.   ADA Accessibility Issues (Count 1)

First, Plaintiff alleges Meta violated the Americans with Disabilities Act (ADA) (Count 1) "due to a lack of screen reader compatibility and other necessary accommodations" on Facebook Marketplace. FAC at 2. To prevail on an ADA claim, "the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Plaintiff fails to state a claim because Facebook Marketplace is not a "place of public accommodation" under the ADA because it is not a physical location. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (interpreting "place of public accommodation" to require "some connection between the good or service complained of and an actual physical place"); *Lloyd v. Facebook, Inc.*, No. 23-15318, 2024 WL 3325389, at *1 (9th Cir. July 8, 2024) ("We agree with the district court that the ADA claim fails because Facebook is not a place of public accommodation."). The Court **GRANTS** Meta's motion to dismiss this claim

**WITHOUT LEAVE TO AMEND**.

### 2. Government Monitoring (Count 3)

Second, Plaintiff asserts a claim for "government monitoring" (Count 3), alleging that Meta "unlawfully cooperated with government agencies." FAC at 2. This claim fails because "government monitoring" is not a recognized cause of action. To the extent Plaintiff was trying to make a claim under the Fourth Amendment, it fails because Meta is not a state actor and the Fourth Amendment does not apply to it. *See United States v. Rosenow*, 50 F.4th 715, 735 (9th Cir. 2022) (in a criminal case, finding Yahoo's and Facebook's private searches of defendant's accounts did not trigger Fourth Amendment protection). The Court **GRANTS** Meta's motion to dismiss this claim **WITHOUT LEAVE TO AMEND**.

### 3. FOIA Requests (Count 5)

Third, Plaintiff attempts to raise a claim under the Freedom of Information Act (FOIA) (Count 5), alleging that Meta has not responded to his FOIA requests for information about "unauthorized surveillance and data collection activities conducted by Meta Platforms, Inc. in cooperation with government agencies." FAC at 3. The FOIA provides that "each *agency*, upon any request for records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A) (emphasis added). Private companies like Meta are not an "agency" under FOIA. *See Forsham v. Harris*, 445 U.S. 169, 179-80 (1980) (finding private organizations receiving federal financial assistance grants are not within the FOIA definition of "agency," absent "extensive, detailed, and virtually day-to-day supervision"). Thus, Plaintiff fails to state a claim under FOIA, and the Court **GRANTS** Meta's motion to dismiss this claim **WITHOUT LEAVE TO AMEND**.

### 4. Invasion of Privacy (Count 13)

Fourth, Plaintiff alleges that Meta "intruded upon Plaintiff's seclusion, publicly disclosed private facts, and appropriated Plaintiff's name or likeness without consent," and "Meta's unauthorized access to private messages, tracking of user activity without consent, and sharing of personal information with third parties have violated Plaintiff's privacy rights." FAC at 5. To the extent Plaintiff asserts an intrusion upon seclusion claim, he must show "(1) intrusion into a private

place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Taylor v. S.F. Sheriff's Dep't*, No. 23-CV-04121-DMR, 2024 WL 2808650, at *18 (N.D. Cal. May 31, 2024) (citation omitted). Plaintiff does not plead sufficient facts to state a plausible claim under this standard. He does not identify what type of data at issue, why he has an "objectively reasonable expectation" that he could keep this data private, and why a reasonable person under those circumstances (whatever they might be) would consider Meta's access to this data highly offensive. The Court therefore **GRANTS** Meta's motion to dismiss this claim **WITH LEAVE TO AMEND**.

### 5. Antitrust Violations (Count 14)

Fifth, Plaintiff alleges that Meta violated the Sherman Act and the Clayton Act and that it has "monopolistic control over social media and advertising platforms" that have "restricted competition and unfairly disadvantaged small businesses like Plaintiff's." FAC at 5 (Count 14). Plaintiff's claim fails because his conclusory allegation does not make clear what theory he intends to rely on. *See Twombly*, 550 U.S. at 555 (finding, in a case alleging antitrust conspiracy, plaintiffs failed to meet the pleading standard because "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," and "[f]actual allegations must be enough to raise a right to relief above the speculative level" (citations omitted)). Because Plaintiff fails to state a claim under the Sherman Act or the Clayton Act, the Court **GRANTS** Meta's motion to dismiss this claim **WITH LEAVE TO AMEND**.

### 6. Violation of Civil Rights (Count 16)

Sixth, Plaintiff alleges that Meta conspired with the government in violation of his civil rights under 42 U.S.C. § 1983 (Count 16). FAC at 5. This claim also fails because Plaintiff has not—and cannot—allege that Meta, a private company, is a state actor. *See, e.g., Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 808 (9th Cir. 2010) (dismissing a Section 1983 claim because the defendant was not a state actor). Because Plaintiff fails to state a claim under Section 1983, the Court **GRANTS** Meta's motion to dismiss this claim, **WITHOUT LEAVE TO AMEND**.

///

To the extent Plaintiff seeks to allege a violation of 42 U.S.C. § 1985, that claim must also be dismissed because he has failed allege a sufficient factual basis.  Accordingly, the Court **GRANTS** Meta's motion to dismiss this claim **WITH LEAVE TO AMEND**.

### 7.  Use of Written Messages for AI Training and Profit Sharing (Count 22)

The only case Plaintiff cites in support of his final cause of action, *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), involved an intellectual property claim that did not implicate the internet or Meta. FAC at 7. Here, to the extent Plaintiff seeks to allege an intellectual property claim, he has not adequately alleged that he owns any intellectual property rights or alleged facts sufficient to identify the content to which those rights apply. *See id.* The Court therefore **GRANTS** Meta's motion to dismiss this claim **WITH LEAVE TO AMEND**.

### IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant Meta's Motion to Dismiss. While Plaintiff has previously amended his complaint, leave to amend should be liberally granted.  For this reason, the Court will allow Plaintiff a further opportunity to amend his complaint, but only as to Counts 13, 14, 16 (as to Section 1985 only), and 22.  All other claims are **DISMISSED WITHOUT LEAVE TO AMEND**. The deadline for Plaintiff to file his second amended complaint is **December 5, 2025**. While the Court is allowing Plaintiff an opportunity to cure the deficiencies discussed above with respect to Counts 13, 14, 16 (as to Section 1985 only), and 22, Plaintiff may not otherwise add new substantive allegations, new counts, or new defendants.  In his second amended complaint, Plaintiff may not incorporate material from the prior complaint by reference.  Failure to file an amended complaint in accordance with this Order in the time provided will result in dismissal of this case without further notice to Plaintiff.

To aid in the preparation of his second amended complaint, Plaintiff is encouraged to contact the Federal Pro Bono Project's Help Desk – a free service for pro se litigants – by calling (415) 782-8982 to make an appointment to obtain legal assistance from a licensed attorney.  More information about the program is available online at the Court's website at

///

< https://cand.uscourts.gov/representing-yourself/jdc-legal-help-center-san-francisco-oakland-courthouses >.

**IT IS SO ORDERED.**

Dated: November 4, 2025

By: _____
**ARACELI MARTÍNEZ-OLGUÍN**
United States District Judge